# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Regents of the University of Minnesota, | Civil No. 16-CV-2915 (SRN/HB) |
| **Plaintiff,** | |
| | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| Gilead Sciences, Inc., | |
| **Defendant**. | |

---

Brian J. Slovut, University of Minnesota, Office of the General Counsel, 200 Oak Street Southeast, Suite 360, Minneapolis, Minnesota 55455, Christopher W. Henry, Edward R. Gates, Gerald B. Hrycyszyn, Marie A. McKiernan, Michael A. Albert, Wolf Greenfield & Sacs, P.C., 600 Atlantic Avenue, Boston, Massachusetts 02210, Erin E. Conti, John R. Marti, Katherine N. Arnold, Dorsey & Whitney LLP, 50 South Sixth Street, Suite 1500, Minneapolis, Minnesota 55402, Kenneth A. Liebman, and Timothy E. Grimsrud, Faegre Baker Daniels LLP, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota 55402, for Plaintiff.

Adam K. Mortara, Faye Paul, J. Scott McBride, Katherine G. Minarik, Nevin Gewertz, Rebecca T. Horwitz, Bartlit Beck Herman Palenchar and Scott LLP, 54 West Hubbard Street, Suite 300, Chicago, Illinois 60654, Alison G. Wheeler, Glen E. Summers, Nosson D. Knobloch, Bartlit Beck Herman Palenchar and Scott LLP, 1899 Wynkoop Street, Suite 800, Denver, Colorado 80202, Barbara P. Berens, Carrie L. Zochert, and Erin K. Fogarty Lisle, Berens & Miller, PA, 80 South Eighth Street, Suite 3720, Minneapolis, Minnesota 55402, for Defendant.

---

SUSAN RICHARD NELSON, United States District Court Judge

Before the Court is Defendant's Motion to Transfer Venue [Doc. No. 142]. For

the reasons stated herein, Defendant's Motion is granted, and this case is transferred to

the Northern District of California.

## I.    BACKGROUND

In this patent infringement suit, the Regents of the University of Minnesota ("the University") allege that Gilead Sciences, Inc. ("Gilead") infringes the University's intellectual property rights in a patent for a drug known as sofosbuvir.  (Compl. ¶ 3 [Doc. No. 1].)  Sofosbuvir is an antiviral agent used to treat the hepatitis C virus ("HCV") infections.  (See id. ¶ 41.)   The University holds all rights to the patent at issue (the '830 Patent).   (id. ¶ 33.)  The University alleges that Gilead has infringed the '830 Patent by selling over one billion dollars in sofosbuvir-containing medicines, including Gilead's Sovaldi®, Harvoni®, and Epclusa® brand-name medicines, without obtaining the University's authorization or otherwise compensating the University.  (Id. ¶¶ 3; 46–55.)

### A.    Factual Background

Gilead is a Delaware corporation, with its principal place of business in Foster City, California.  (Id. ¶ 2.)  Between 2014 and 2016, Gilead employed the following twelve employees in Minnesota in the positions of Regional Sales Director, Therapeutic Specialist, Community Specialist, and Medical Scientist:  Chad Blomgren, Mary Ellen Feldstein, Byron Hamilton, Tracey Johnson, Ajit Kulkarni, Joe Llewellyn, Julie Miller, Carson Munroe, Jaymee Murakami, Christi Murphy, Allison Passolt, and Thomas Wolfe.[1]

---

[1] Jaymee Murakami, who was a Therapeutic Specialist in Gilead's Oncology Division, is a former Gilead employee.  ( D. Johnson Dep. at 76, Ex. E to Hrycyszyn Decl. [Doc. No. 173].)

(Def.'s Resp. to Pl.'s Second Set of Interrogs., Interrog. Resp. No. 5, Ex. A to Minarik Decl. [Doc. No. 157]; D. Johnson Decl. ¶ 5 [Doc. No. 145].)

A majority of the twelve employees work in sales and marketing positions as Therapeutic Specialists or Community Specialists, or as managers of those positions. (See Passolt Decl. ¶¶ 2–3 [Doc. No. 147]; Miller Decl. ¶¶ 2–3 [Doc. No. 152]; Vogel Decl. ¶¶ 4–5 [Doc. No. 1154]; Wolfe Decl. ¶¶ 2–3 [Doc. No. 155]; T. Johnson Decl. ¶¶ 2–3 [Doc. No. 156]; Hamilton Decl. ¶ 4 [Doc. No. 148]; Blomgren Decl. ¶ 4 [Doc. No. 149].)   Therapeutic Specialists visit and educate "learned intermediaries," such as health care providers, hospitals, and pharmacies, about Gilead's products, and Community Specialists also visit learned intermediaries, as well as community groups.   (See D. Johnson Decl. ¶¶ 4; 6; see also D. Johnson Dep. at 14–15, Ex. E to Hrycyszyn Decl.) Therapeutic Specialists and Community Specialists also occasionally plan local exhibits or conferences.  (Id.)    (See D. Johnson Decl. ¶ 6 [Doc. No. 145]; D. Johnson Dep. at 9, Ex. E to Hrycyszyn Decl.)   David Johnson, Gilead's Vice President of Sales and Marketing, Liver Disease Unit, asserts that while these are sales positions, "sales" in the pharmaceutical industry do not involve direct sales from the salesperson to the customer. (See D. Johnson Dep. at 13–15, Ex. E to Hrycyszyn Decl.)   Rather, pharmaceutical salespersons attempt to sway medical providers to prescribe particular medications to their patients.  (See id.)  Consistent with Johnson's testimony, Gilead's Minnesota Therapeutic Specialists, Community Specialists, and their managers contend that they do not take orders from customers or solicit sales directly from distributors, wholesalers,

3

pharmacies, or pharmacy benefit managers.  (Passolt Decl. ¶ 10; Hamilton Decl. ¶ 10; Blomgren Decl. ¶ 11; Murphy Decl. ¶ 10 [Doc. No. 150]; Miller Decl. ¶ 11; Feldstein Decl. ¶ 10; Vogel Decl. ¶ 9; Wolfe Decl. ¶ 10; T. Johnson Decl. ¶ 11.)

Gilead's Medical Scientists in Minnesota respond to questions from healthcare providers about Gilead's products, and coordinate experiments and clinical projects regarding Gilead's various drug therapies.  (See D. Johnson Decl. ¶ 4; Kulkarni Decl. ¶ 4 [Doc. No. 146]; Llewellyn Decl. ¶ 5 [Doc. .No. 151].)   Like the Therapeutic Specialists and Community Specialists, Medical Scientists do not take customers' orders or make direct sales.  (Kulkarni Decl. ¶ 10; Llewellyn Decl. ¶ 11.)

Through its headquarters in Foster City, California, Gilead sells its healthcare products to wholesalers or pharmacies.  (D. Johnson Decl. ¶ 7.)  Gilead's Minnesota sales force likewise understands that all orders are placed with corporate headquarters in California.  (Kulkarni Decl. ¶ 10; Passolt Decl. ¶ 10; Hamilton Decl. ¶ 10; Murphy Decl. ¶ 10; Llewellyn Decl. ¶ 11; Miller Decl. ¶ 11; Wolfe Decl. ¶ 10; T. Johnson Decl. ¶ 11.)

Three Minnesota employees perform a greater portion of their work outside of Minnesota, (Kulkarni Decl. ¶ 5; Hamilton Decl. ¶ 5;  Miller Decl. ¶ 5), as was also true of another employee, during the time that he lived in Minnesota.  (Blomgren Decl. ¶ 6.) Yet another employee splits her time equally between Minnesota and a neighboring state, (T. Johnson Decl. ¶ 5), while six others perform the majority of their work in Minnesota. (Passolt Decl. ¶ 5; Murphy Decl. ¶ 5; Llewellyn Decl. ¶ 6; Feldstein Decl. ¶ 5; Wolfe Decl. ¶ 5; T. Johnson Decl. ¶ 5.)

None of the employees work from a physical Gilead office in Minnesota.
(Kulkarni Decl. ¶ 5; Passolt Decl. ¶ 5; Hamilton Decl. ¶ 5; Blomgren Decl. ¶ 6; Murphy Decl. ¶ 5; Llewellyn Decl. ¶ 6; Miller Decl. ¶ 5; Feldstein Decl. ¶ 5; Vogel Decl. ¶ 7; Wolfe Decl. ¶ 5; T. Johnson Decl.)  Instead, they perform the majority of their work "in the field," i.e., in health care providers' offices, clinics, hospitals, and pharmacies.  (Id.)

When they are not working in the field, the employees work from their respective home offices, as opposed to a separate, physical Gilead office in Minnesota.[2]  (Kulkarni Decl. ¶ 7; Passolt Decl. ¶ 7; Hamilton Decl. ¶¶ 5; 7; Blomgren Decl. ¶ 7; Murphy Decl. ¶¶ 5; 7; Llewellyn Decl. ¶¶ 6; 8; Miller Decl. ¶¶ 5; 7; Feldstein Decl. ¶ 7; Wolfe Decl. ¶ 7; T. Johnson Decl. ¶ 7.)  Two employees have taken a tax deduction for their home office at some point, (Kulkarni Decl. ¶ 7; Miller Decl. ¶ 7), although the majority have not. (Passolt Decl. ¶ 7; Hamilton Decl. ¶ 7; Blomgren Decl. ¶ 7; Murphy Decl. ¶ 7**;** Feldstein Decl. ¶ **7;** Wolfe Decl. ¶ **7**; T. Johnson Decl. ¶ 7.)

Gilead's Minnesota employees do not use an administrative or secretarial service in this state or elsewhere.  (Kulkarni Decl. ¶ 7; Passolt Decl. ¶ 7; Hamilton Decl. ¶ 7; Blomgren Decl. ¶ 7; Murphy Decl. ¶ 7; Llewellyn Decl. ¶ 8; Miller Decl. ¶ 7; Feldstein Decl. ¶ 7; Wolfe Decl. ¶ 7; T. Johnson Decl. ¶ 7.)  Their respective home offices contain a computer, printer, and iPad provided by Gilead (Kulkarni Decl. ¶ 7; Passolt Decl. ¶ 7;

_____

Several of these employees also use their home offices for personal purposes.  (Passolt Decl. ¶ 7; Hamilton Decl. ¶ 7; Murphy Decl. ¶ 7; Miller Decl. ¶ 7; Feldstein Decl. ¶ 7; Wolfe Decl. ¶ 7; T. Johnson Decl. ¶ 7.)

Hamilton Decl. ¶ 7; Blomgren Decl. ¶ 7; Murphy Decl. ¶ 7; Llewellyn Decl. ¶ 8; Miller

Decl. ¶ 7; Feldstein Decl. ¶ 7; Vogel Decl. ¶ 8; Wolfe Decl. ¶ 7; T. Johnson Decl. ¶ 7),

and in one instance, a projector. (Murphy Decl. ¶ 7.) Gilead pays for its employees'

home phone, internet, a portion of their monthly cell phone bills, and the lease on their

vehicles. (Kulkarni Decl. ¶ 9; Passolt Decl. ¶ 9; Hamilton Decl. ¶ 9; Blomgren Decl. ¶ 10;

Murphy Decl. ¶ 7; Llewellyn Decl. ¶ 10; Miller Decl. ¶ 9; Feldstein Decl. ¶ 9; Vogel

Decl. ¶ 8; Wolfe Decl. ¶ 9; T. Johnson Decl. ¶ 9.) Gilead listed the yearly total amount of

these auto lease payments as "capitalized rents" and "total property" in its 2014 and 2015

corporation franchise tax returns prepared for the Minnesota Department of Revenue.

(See Exs. C [at GSI-SOF00038264] & D [at GSI-SOF00038266] to Hrycyszyn Decl.; D.

Johnson Dep. at 37, Ex. E to Hrycyszyn Decl.) Also on these forms, Gilead entered no

amount for "average tangible property and land owned/used," leaving the line blank.

(See Ex. C [at GSI-SOF00038264] & D [at GSI-SOF00038266] to Hrycyszyn Decl.)

Gilead's Minnesota employees do not stock any Gilead products for sale in their

homes or elsewhere in Minnesota. (D. Johnson Decl. ¶ 10.) A few employees keep a

limited supply of Gilead promotional material in their homes. (Passolt Decl. ¶ 7;

Hamilton Decl. ¶ 7; Blomgren Decl. ¶ 7; Miller Decl. ¶ 7; Wolfe Decl. ¶ 7; T. Johnson

Decl. ¶ 7.) Two Minnesota Gilead employees keep samples of two different Gilead

products (non-HCV) in Minnesota, (D. Johnson Decl. ¶ 10; Miller Decl. ¶ 10; T. Johnson

Decl. ¶ 10), in an offsite storage locker leased by Gilead through a third party. (Def.'s

Resp. to Pl.'s Second Set of Interrogs., Interrog. Resp. No. 4, Ex. A to Minarik Decl.) A

third Gilead employee, who lives in Wisconsin, keeps a quantity of another Gilead product (non-HCV) in a storage locker located in Minnesota. (Id.) Gilead does not lease or own any other property in Minnesota such as "offices, warehouses, manufacturing plants, research and development centers, laboratories, or any facilities where commercial stocks of Gilead commercial products are consistently maintained." (Id.; see also D. Johnson Decl. ¶ 10.)

While Gilead's Minnesota sales force receives business mail at their individual home addresses, (Kulkarni Decl. ¶ 7; Passolt Decl. ¶ 7; Hamilton Decl. ¶ 7; Blomgren Decl. ¶ 7; Murphy Decl. ¶ 7; Llewellyn Decl. ¶ 8; Miller Decl. ¶ 7; Feldstein Decl. ¶ 7; Wolfe Decl. ¶ 7; T. Johnson Decl. ¶ 7), their business cards list Gilead's corporate address in California, not their home addresses.[3] The phone numbers on the business cards for three employees list a California number that forwards to the employees' automated voice messaging mailboxes. (Passolt Decl. ¶ 6; Feldstein Decl. ¶ 6; Wolfe Decl. ¶ 6). Most of the Minnesota employees list their personal cell phone numbers, with Minnesota area codes, on their business cards. (Blomgren Decl. ¶ 7; Passolt Decl. ¶ 6; Hamilton Decl. ¶ 6; Blomgren Decl. ¶ 7; Murphy Decl. ¶ 6; Miller Decl. ¶ 6; Feldstein Decl. ¶ 6; Wolfe Decl. ¶ 6; T. Johnson Decl. ¶ 6.) To the best of their knowledge, none of the employees' home addresses or personal phone numbers are listed in any Minnesota

---

[3] Only one employee, Blomgren, who now works for Gilead in California, believes that when he worked in Minnesota, his business cards listed his home address, but might have listed the California corporate address, at times. (Blomgren Decl. ¶ 7.)

directory as an address or phone number for Gilead.  (Kulkarni Decl. ¶ 8; Passolt Decl. ¶ 8; Hamilton Decl. ¶ 8; Blomgren Decl. ¶ 9; Murphy Decl. ¶ 8; Llewellyn Decl. ¶ 9; Miller Decl. ¶ 8; Feldstein Decl. ¶ 8; Wolfe Decl. ¶ 8; T. Johnson Decl. ¶ 8.)

### B.    Procedural History

In the Complaint, filed in August 2016, the University asserts that this Court has personal jurisdiction over Gilead and that venue is proper "under at least 28 U.S.C. § 1391 and 1400."  (Compl. ¶¶ 6–7.)   However, on May 22, 2017, while the parties were engaged in discovery, the U.S. Supreme Court issued a decision in TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 137 S. Ct. 1514 (2017), that significantly affected venue in patent cases.  In light of TC Heartland, Gilead sought expedited briefing on its motion to dismiss for improper venue, and requested a short stay of all other proceedings.  (Def.'s June 8, 2017 Letter at 2–3 [Doc. No. 128].)  The Court granted Gilead's request, scheduled the hearing on its motion to dismiss, and stayed all other pending deadlines and non-venue-related discovery.  (June 12, 2017 Order at 2 [Doc. No. 140].)

More recently, on September 21, 2017, and in light of TC Heartland, the Federal Circuit Court of Appeals issued a decision concerning venue in patent infringement cases, In re: Cray, Inc., __ F.3d___, 2017 WL 4201535 (Fed. Cir. Sept. 21, 2017) ("Cray") that is highly relevant to this case.  In response to the parties' joint request for supplemental briefing in light of Cray, (Sept. 25, 2017 Letter [Doc. No. 222]), the Court granted the request.  (September 26, 2017 Order at 1 [Doc. No. 223].)

In its supplemental briefing, Gilead argues that under TC Heartland and Cray, the

University cannot meet its burden to establish venue in this District because Gilead is not incorporated in Minnesota and lacks a regular, established physical location from which it conducts business in the state.  (Def.'s Supp'l Mem. at 2–11 [Doc. No. 230].)   While the University acknowledges that Gilead is not incorporated in Minnesota, it contends that venue is proper in this District because Gilead has a regular and established place of business here.  (Pl.'s Supp'l Opp'n Mem. at 2–3 [Doc. No. 229].)

## II.     DISCUSSION

In TC Heartland, 137 S. Ct. at 1518–19, the U.S. Supreme Court clarified that the narrower, patent-specific venue statute, 28 U.S.C. § 1400(b), determines venue in patent infringement suits, and the general venue statute, 28 U.S.C. § 1391, under which venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction," does not inform the interpretation of the patent venue statute. Under § 1400(b), venue for patent infringement actions properly lies either:  (1) in the district where the defendant "resides;"  or (2) "where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).

Applied to domestic corporation defendants, "residence," under the first prong of § 1400(b), refers solely to the state in which the defendant is incorporated.  TC Heartland, 137 S. Ct. at 1521.  In TC Heartland, the Supreme Court considered venue under this first prong.  However, in Cray, the Federal Circuit considered venue under the second prong, finding that, for patent infringement actions, a corporation has a "regular and established place of business" when the following three requirements are met: (1) the defendant has a

physical place in the district; (2) it is a regular and established place of business; and (3) it is the place of the defendant." 2017 WL 4201535, at *4. All of these elements must be present to satisfy venue under § 1400(b). Id.

### A. Regular and Established Place of Business

Because Gilead is incorporated in the State of Delaware, the University cannot establish venue in Minnesota under the first prong of § 1400(b), as Gilead does not "reside" in this District.. See TC Heartland, 137 S. Ct. at 1521. The resolution of Gilead's Motion to Transfer thus turns on whether Plaintiff can establish that Gilead has a "regular and established place of business" in Minnesota under the second prong of § 1400(b).[4] When a defendant asserts a venue challenge under this prong, the plaintiff bears the burden of establishing venue. Cordis Corp. v. Cardiac Pacemakers, 599 F.2d 1085, 1086 (1st Cir. 1979). In determining whether venue is proper, the Federal Circuit advises that "no precise rule has been laid down and each case depends on its facts." Cray, 2017 WL 4201535, at *5.

### 1. Physical Place in the District

Although the defendant's "place" need not necessarily be a "'fixed physical presence in the sense of a formal office or store,'" id. (quoting Cordis, 769 F.2d at 737), it cannot be a "virtual" place. Id. Rather, a "physical, geographical location in the district"

---

[4] As to the second prong's other requirement that the defendant commit acts of infringement in the District, the University has alleged that Gilead infringed its patents in Minnesota. (See Compl. ¶¶ 9–10.)

is required to establish the first venue element under this prong of § 1400(b).  Id.

The facts before this Court show that Gilead does not have a physical place in this District.  None of Gilead's employees work from a stand-alone business office in Minnesota, but instead, work in the field, visiting healthcare providers.  (Kulkarni Decl. ¶ 5; Passolt Decl. ¶ 5; Hamilton Decl. ¶ 5; Blomgren Decl. ¶ 6; Murphy Decl. ¶ 5; Llewellyn Decl. ¶ 6; Miller Decl.  ¶ 5; Feldstein Decl. ¶ 5; Vogel Decl. ¶ 7; Wolfe Decl. ¶ 5; T. Johnson Decl. ¶ 5.)  In fact, when speaking about Gilead's Minnesota employees, Gilead's Sales and Marketing Vice President Johnson testified, "[M]ost of their work is done from a clinic or from a car or from a hotel. . . . [T]hey don't work in their home[s]." (D. Johnson Dep. at 71, Ex. A to Mortara Decl. [Doc. No. 233].)

To the extent that Gilead's employees do perform some work in their homes, when not in the field, (see Kulkarni Decl. ¶ 7; Passolt Decl. ¶ 7; Hamilton Decl. ¶ 7; Blomgren Decl. ¶ 7; Murphy Decl. ¶ 7; Llewellyn Decl. ¶ 8; Miller Decl. ¶ 7; Feldstein Decl. ¶ 7; Wolfe Decl. ¶ 7l T. Johnson Decl. ¶ 7), Cray suggests that courts should consider how the homes are used in the performance of the defendant's work.  See 2017 WL 4201535, at *5.  For example, courts may consider whether the defendant uses its employees' homes to store literature or products, and, as to products, whether the homes function as distribution centers, storing inventory that employees convey directly to customers.  Id. (citing Cordis, 769 F.2d at 735).  In Cordis, where venue was deemed proper, the defendant used its two Minnesota employees' homes to store literature, documents, and products, and occasionally used the homes as distribution centers.  769 F.2d at 735.

Here, however, none of the Gilead employees in Minnesota store products for sale in their homes, or anywhere in Minnesota, nor do their homes function as distribution centers.[5] (D. Johnson Decl. ¶ 10.) And while some employees keep a limited quantity of Gilead literature in their homes, (Passolt Decl. ¶ 7; Hamilton Decl. ¶ 7; Blomgren Decl. ¶ 7; Miller Decl. ¶ 7; Wolfe Decl. ¶ 7; T. Johnson Decl. ¶ 7), given the negligible quantity, this relatively limited practice does not sufficiently support a finding that these homes constitute Gilead's physical place in Minnesota.

Another consideration in <u>Cray</u> relevant to physical presence, and relied on in <u>Cordis</u>, is whether the defendant employs a secretarial service located in the district. <u>Cray</u>, 2017 WL 4201535, at *5. In <u>Cordis</u>, not only did the defendant hire such a service located in Minnesota, the Minneapolis telephone directory listed Cordis' name and telephone number, along with the address of the secretarial service, which answered calls as "Cordis Corporation." 769 F.2d at 735. The employees' business cards also listed the telephone number answered by the secretarial service. <u>Id.</u> In contrast, in <u>Cray</u>, in which the court found improper venue, the defendant stored nothing in its employees' homes and all administrative support for the employees came from outside the district. 2017 WL 4201535, at *7–9.

Here, similar to <u>Cray</u>, none of Gilead's Minnesota employees receives any

---

[5] As to two Minnesota-based employees and a Wisconsin-based employee who store free samples of products in a Minnesota storage locker, the Court analyzes these facts below, in its discussion of whether Minnesota is the regular and established place of business of Gilead.

administrative or secretarial support, whether in Minnesota or elsewhere.  (Kulkarni Decl.
¶ 7; Passolt Decl. ¶ 7; Hamilton Decl. ¶ 7; Blomgren Decl. ¶ 7; Murphy Decl. ¶ 7;
Llewellyn Decl. ¶ 8; Miller Decl. ¶ 7; Feldstein Decl. ¶ 7; Wolfe Decl. ¶ 7; T. Johnson
Decl. ¶ 7.)

Accordingly, the Court finds that Gilead lacks a physical place in Minnesota.
Because all three elements—a physical place, that is "regular and established," and "of
the defendant"—must be present to confer venue under the second prong of § 1400(b),
the Court could end its analysis of venue here, finding venue improper in this District.
However, because consideration of the remaining two elements further supports the
Court's ruling, the Court addresses them as well.

## 2.      "Regular and Established" Place of Business

As noted, the second element necessary for venue under the second prong of
§ 1400(b) requires that the place of business in the district be regular and established.  A
"regular" business is one that operates in a "'steady, uniform, orderly, and methodical"
manner, or, in other words, is non-sporadic.  Cray, 2017 WL 4201535, at *5 (citation and
internal punctuation omitted).  In addition, an "established" place is one that is "settled
certainly, or fixed permanently."  Id. (citation and internal punctuation omitted).  It must
be a place of "sufficient permanence."  Id. (citing Phillips v. Baker, 121 F.2d 752, 756 (9
Cir. 1941)).  For instance, the court in Cray noted that a business displaying its products
at a semiannual trade show was only a temporary presence.  Id. (citing Knapp–Monarch
Co. v. Casco Prods. Corp, 342 F.2d 622, 625 (7th Cir. 1965)).

While Gilead may have employed a sales force of approximately a dozen people over at least a two-year period, the physical location of that sales force is not permanently fixed. As the Federal Circuit observed in <u>Cray</u>, "[I]f an employee can move his or her home out of the district at his or her own instigation, without the approval of the defendant, that would cut against the employee's home being considered a place of business of the defendant." 2017 WL 4201535, at *6. Gilead's Minnesota employees are not required to live in Minnesota. (D. Johnson Dep. at 129, Ex. A to Mortara Decl.) ("These positions cover multiple states. So it is not required that the person live in Minnesota and still be able to adequately cover these customers.") This weighs against a finding that Gilead's physical presence in Minnesota is regular and established.

As evidence of Gilead's "permanent and continuous presence" in Minnesota, the University points to Gilead's Minnesota sales figures. (Pl's Opp'n Mem. at 15 [Doc. No. 171].) The University's emphasis on financial performance, however, is misplaced. <u>Cray</u> emphasizes that defendants must maintain a permanent and continuous <u>place</u> in the district in question. 2017 WL 4201535, at *5–7. In any event, in <u>Cray</u>, the Federal Circuit was apparently unpersuaded that even higher sales figures than the amounts noted here, indicated a regular and established place of business. <u>See</u> <u>id.</u> at *1.

The University also asserts that unlike the defendant in <u>Cray</u>, it has provided evidence that Gilead services its customers in this District. (Pl.'s Supp'l Mem. at 5–9.) The plaintiff in <u>JPW Industries, Inc. v. Olympia Tools International, Inc.</u>, No. 3:16-cv-3153-JPM, 2017 WL 4512501, at * 3 (M.D. Tenn. Oct. 10, 2017), raised a similar

argument, asserting that the defendant's contacts with its distributors, retailers, and consumers in the district constituted ongoing and continuous connections.  The court rejected the argument, however, because of the defendant's lack of a physical presence in the district.  Id.  While the Court agrees that Gilead's employees service customers in Minnesota, whether through visits to healthcare providers or clinical trial facilities, this servicing occurs at the customer's physical place, not Gilead's.   As in JPW Industries, this does not sufficiently support a finding of a regular and established place of business in Minnesota.

For all of these reasons, the Court finds that the University has not established the second element necessary to support venue in this District under § 1400(b)'s second prong.

### 3.      The "Place of the Defendant"

The third element necessary for venue requires that the regular and established business be "a place of the defendant, not solely a place of the defendant's employee." Cray, 2017 WL 4201535, at *6.  The place must be ratified or established as the defendant's place by the defendant:  "it is not enough that the employee does so on his or her own."  Id.  Important considerations for this factor may include whether the defendant owns or leases the place, whether the defendant exercises possession or control over the place, whether the defendant conditioned employment on the employee's continued residence in the district, whether materials are stored at a place in the district for distribution or sale, id. (citing Cordis, 769 F.2d at 735; Am. Cyanamid Co. v. Nopco

Chem. Co., 388 F.2d 818, 820 (4th Cir. 1968); Grantham v. Challenge–Cook Bros., Inc., 420 F.2d 1182, 1185–86 (7th Cir. 1969); Univ. of Ill. Found. v. Channel Master Corp., 382 F.2d 514, 516 (7th Cir. 1967); Shelton v. Schwartz, 131 F.2d 805, 808 (7th Cir. 1942)), or whether the defendant holds out a place for its business in marketing materials. Id.

### a.        Ownership and Control

In Cray, the court observed that there was no indication that the defendant owned, leased, or rented any portion of the employees' homes, nor was there any evidence that the defendant played a part in their selection.  2017 WL 4201535, at *7.  The same is true here.  As a fundamental matter, there appears to be no dispute that Gilead lacks a physical office in Minnesota, and does not own its employees' homes in Minnesota, nor did it participate in their selection.  Instead, the evidence demonstrates that Gilead does not own a physical "place" of any kind in this District.  In its Minnesota franchise tax returns for 2014 and 2015, Gilead left blank, and did not enter any dollar amount, for the line requesting "average tangible property and land owned/used."  (See Ex. C [at GSI-SOF00038264] & D [at GSI-SOF00038266] to Hrycyszyn Decl.)  On the same forms, Gilead listed the total amount of automobile leases it assumed on behalf of its Minnesota employees.  (See id.)  But lease payments for transient vehicles do not sufficiently evidence Gilead's regular and established physical place of business in Minnesota.

As noted, two Minnesota employees, (D. Johnson Decl. ¶ 10; Miller Decl. ¶ 10; T. Johnson Decl. ¶ 10), and a third employee, who resides in Wisconsin, maintain limited

quantities of sample Gilead medications in storage lockers located in Minnesota. (Def.'s Resp. to Pl.'s Second Set of Interrogs., Interrog. Resp. No. 4, Ex. A to Minarik Decl.) Gilead leases these offsite storage lockers through a third party. (Id.) The Court is not persuaded that these relatively small storage lockers, containing a limited quantity of pharmaceutical products, constitute a sufficiently regular and established physical foothold of Gilead in Minnesota.

Nor is the Court persuaded by the fact that Gilead provides computers, printers, and iPads to its Minnesota employees and pays their phone, internet, and cell phone bills. (Kulkarni Decl. ¶ 7; Passolt Decl. ¶ 7; Hamilton Decl. ¶ 7; Blomgren Decl. ¶ 7; Murphy Decl. ¶ 7; Llewellyn Decl. ¶ 8; Miller Decl. ¶ 7; Feldstein Decl. ¶ 7; Vogel Decl. ¶ 8; Wolfe Decl. ¶ 7; T. Johnson Decl. ¶ 7.) The defendant in Cray provided similar items or reimbursements, see 2017 WL 4201535, at *7, yet the court found venue improper. Gilead's provision of these non-fixed, temporary items is insufficient to establish or ratify Gilead's place of business in Minnesota.

The University also cites Gilead's "control" over dozens of clinical trials in Minnesota as evidence that Gilead exercises ownership or control over a place in Minnesota. (Pl.'s Supp'l Mem. at 9–10.) While Gilead may indeed closely control the protocol of these studies, and the presence of its drugs, there is no evidence that Gilead owns or controls the physical space in which the trials are held.

### b.      Condition of Employment

The University also argues that the presence of Gilead's employees in Minnesota is "material" to the company's business, and that Gilead depends on this physical presence. (Pl.'s Supp'l Opp'n Mem. at 6.)  But Gilead did not condition its offers of employment on residence in Minnesota, let alone the maintenance of a home office in the state.  (D. Johnson Dep. at 129, Ex. A to Mortara Decl.) ("These positions cover multiple states.  So it is not required that the person live in Minnesota and still be able to adequately cover these customers.")  Moreover, as a practical matter, Gilead does not require Minnesota-based employees to live in the state for purposes of serving its Minnesota customers.  As Vice President of Sales and Marketing Johnson testified, "Regardless of where [Gilead's employees] live, they're able to interact with Minnesota-based physicians.  It doesn't matter where they live. . . . I would say that people that live in Minnesota or in Wisconsin or anywhere else can still interact effectively with Minnesota-based customers."  (Id. at 129–30) (emphasis added).   Like the employees in Cray, Gilead's employees are "free to live where [they] [choose]."  2017 WL 4201535, at *8.

### c.      Storage and/or Distribution of Employer's Products

As previously discussed, none of Gilead's Minnesota employees store or distribute Gilead products in or from their homes.  (D. Johnson Decl. ¶ 10.)   While a few employees maintain small quantities of promotional literature in their home offices, (Passolt Decl. ¶ 7; Hamilton Decl. ¶ 7; Blomgren Decl. ¶ 7; Miller Decl. ¶ 7; Wolfe Decl.

¶ 7; T. Johnson Decl. ¶ 7), Gilead does not require them to do so. (See D. Johnson Dep. at 79–80, Ex. A to Mortara Decl.) More typically, Gilead's employees store such materials in the trunk of their cars. (Id.) In addition, Gilead's Minnesota employees do not sell products directly to Gilead's customers. (See Passolt Decl. ¶ 10; Hamilton Decl. ¶ 10; Blomgren Decl. ¶ 11; Murphy Decl. ¶ 10; Miller Decl. ¶ 11; Feldstein Decl. ¶ 10; Vogel Decl. ¶ 9; Wolfe Decl. ¶ 10; T. Johnson Decl. ¶ 11; Kulkarni Decl. ¶ 10; Llewellyn Decl. ¶ 11.) Although a home office can be considered a company's place of business under some circumstances, Cray, 2017 WL 4201535, at * 8, the facts here do not sufficiently support an inference that the employees' homes are Gilead's places of business.

### d. Employer's Outward Representations

As noted, a defendant's representations, such as whether it lists the alleged place of business on a website, telephone or other directory, or affixes its name on a sign associated with the physical place in the district, are also relevant to the determination of whether the place is "of the defendant." Id. at *6 (citing Cordis, 769 F.2d at 735; Grantham, 420 F.2d at 1185–86). "But the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient; the defendant must actually engage in business from that location. In the final analysis, the court must identify a physical place, of business, of the defendant." Id.

Gilead does not hold out its employees' homes as the company's places of business. The home addresses and personal phone numbers of Gilead's employees are

not listed in any Minnesota directory or listing for Gilead. (Kulkarni Decl. ¶ 8; Passolt Decl. ¶ 8; Hamilton Decl. ¶ 8; Blomgren Decl. ¶ 9; Murphy Decl. ¶ 8; Llewellyn Decl. ¶ 9; Miller Decl. ¶ 8; Feldstein Decl. ¶ 8; Wolfe Decl. ¶ 8; T. Johnson Decl. ¶ 8.) Likewise, the address displayed on almost all of the employees' business cards is the California address of Gilead's headquarters. (Kulkarni Decl. ¶ 6; Passolt Decl. ¶ 6; Hamilton Decl. ¶ 6; Murphy Decl. ¶ 6; Miller Decl. ¶ 6; Feldstein Decl. ¶ 6; Wolfe Decl. ¶ 6; T. Johnson Decl. ¶ 6.) Only one employee, now residing in California, states, "to the best of his recollection," that when he worked in Minnesota, his business cards listed his home address, although they might have listed Gilead's corporate address "at times." (Blomgren Decl. ¶ 7.) The possible listing of this employee's former Minnesota home address, at some point in time, as a Gilead business is simply too tenuous a connection on which to find that Gilead has a regular and established place of business in Minnesota. And as to phone numbers, while most of the Minnesota employees list their Minnesota phone numbers on their business cards, (Passolt Decl. ¶ 6; Hamilton Decl. ¶ 6; Blomgren Decl. ¶ 7; Murphy Decl. ¶ 6; Miller Decl. ¶ 6; Feldstein Decl. ¶ 6; Wolfe Decl. ¶ 6; T. Johnson Decl. ¶ 6), the employees in <u>Cray</u> listed their home phone numbers as well, 2017 WL 4201535, at *7, yet the court found venue improper. Granted, two Gilead employees took tax deductions for their home offices, (Kulkarni Decl. ¶ 7; Miller Decl. ¶ 7), but again, nothing outwardly conveys that any of the Gilead employees' homes are Gilead's places of business. Such scant evidence of a physical place, <u>of the Defendant</u>, in this District is insufficient to establish venue.

## III.    CONCLUSION

In conclusion, although the Court respects the University's choice of venue, the

Federal Circuit's recent decision in <u>Cray</u>, which this Court must follow, dictates the result

here.  Gilead does not "reside" in this District under the first prong of 28 U.S.C.

§ 1400(b).  Nor does it have a regular and established physical place of business in this

District sufficient to establish venue under the second prong of § 1400(b).

Because Gilead's physical headquarters are located in California, where it has a

regular and established place of business, this case could have been brought in that

district.  Pursuant to 28 U.S.C. § 1406(a), the Court finds that the interests of justice favor

transfer, rather than dismissal.  Accordingly, the Court transfers this case to the United

States District Court for the Northern District of California.

**THEREFORE, IT IS HEREBY ORDERED THAT**

1.    Defendant's Motion to Transfer Venue [Doc. No. 142] is **GRANTED**;

2.    This action is transferred to the United States District Court for the

Northern District of California; and

3.    The Clerk of Court is directed to effect the transfer.


Dated:   October 20, 2017

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge
